The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention. For the Court is now sitting. God save the United States and this Honorable Court. All right, good morning. Please be seated. Welcome to the Fourth Circuit. Our first case, Towers Watson v. National Union Fire Insurance. Mr. Clement, we'll hear from you. Good morning, Your Honors, and may it please the Court. This case turns on the scope of the so-called bump-up exclusion in an insurance contract. It is common ground here that the losses at issue here come within the insurance contract's basic coverage provisions, which promise indemnification for securities claims arising out of acquisitions and mergers. The question is whether, despite that presumptive coverage, the losses are excluded by the clear and unambiguous language in the bump-up exclusion. Now that provision excludes judgment and settlements that represent an increase in effective deal compensation. That poses an immediate problem for the insurance company when it comes to the Virginia settlement resolving federal securities claims under Section 14A. It is well settled that you cannot bring a Section 14A claim for increased deal consideration. I thought Komatsu, among others, said that was somewhat doubtful. No, no. With all contrary, Your Honor, I mean, in Komatsu, Judge Easterbrook was absolutely clear that you can't bring a – well, I think he was clear that you cannot bring a 14A claim for increased deal consideration or complain that you didn't get a bad price. Now, he said in that case, because of the specific language of the bump-up exclusion, it didn't matter that the 14A claim was going to go nowhere on the merits because all that mattered in that case was the allegations because that's what the bump-up exclusion language there read on it. Because the bump-up exclusion is written differently and it has two clauses, not one. And the second clause goes beyond the allegations and asks what does the settlement amount or the judgment amount represent. And in a 14A claim, what the settlement amount or the judgment amount represents is compensatory damages for an inadequate disclosure. And that's just not Seventh Circuit law. That's this circuit's law. That's Supreme Court law. And, you know, if you go back – Is that stock drop law? Is that concept you're getting at? Well, that's one way of getting at it. But I think the point is even broader than that, which when you're bringing a 14A claim, you can't walk into court and say I have a 14A claim and it's premised on the idea that I didn't get enough in this merger. The 14A claim reads on the quality of the disclosures, not the quality of the price that you received in the merger. And importantly, that's different from a state law appraisal claim. And I think in understanding what the bump-up exclusion covers and doesn't cover, it's important to contrast a 14A claim with a state law claim for appraisal. Because in that kind of state law claim, your claim is I didn't get enough consideration in this deal. And then your remedy in the judgment or settlement is literally an increase in effective deal consideration. That's a good point that it's in the appraisal context that's literally an increase in consideration of the price. But your contract language here says it's effectively increased, right? So don't we ask kind of a different question about what is the effect of the award here? Two things, Your Honor. One is even in an appraisal action, you get a remedy at the end of it. You don't get an increase in the actual deal consideration. So even in that appraisal action, what you get is an increase in the effective consideration, not the actual consideration. And then the key word that is not actually effective, because that's going to apply in every case, including an appraisal action. The key word is represented. Because my friend's argument basically wants you to read the clause as not saying that you exclude the amounts that represent an increase in effective deal consideration. He wants you to read it as any amount that results in an increase in effective deal consideration. And that position has two clear defects. One is it ignores the plain language of the exclusion, which does not say resulting in. It says represents. And that, I think, calls you to look at what's the essence of what the judgment or the settlement is about. Not just the fact that a shareholder gets some additional money out of the settlement on a per share basis. And that's the second problem with this reading. Because there's a general principle that you don't read an exclusion in an insurance contract. But at the end of the day, I mean, what's the difference? Well, about $70 million, Your Honor, because in a case like this, a 14A case, I mean, I think it's helpful, too, to think about what if this case goes to judgment. If this case goes to judgment, they get a judgment, and that judgment in a 14A claim is for compensatory damages for inadequate disclosure. And so, yes, it's true that for any securities claim. What would they get there, theoretically, that they would not get with an appraisal claim? So, they would get something that represents two different things. They would still get, I mean, you know, and I understand the point. Like, in both cases, you might get $2 a share for everybody. What difference does it make? It makes all the difference based on both the language. I realize it makes a big difference to your client. Yeah, but it makes a difference to all the clients out there. Because when DNOs, when directors and officers get this coverage, what they are worried about is they are worried about they're going to get some strike suit from the merger or the acquisition based on, among other things, Section 14A. And they're expecting to get coverage from that. And then, if you look at the bump-up exclusion, it excludes a particular kind of claim, which is not a 14A claim. It's a bump-up claim. That's why it's a bump-up exclusion and not a merger exclusion. And that's the fundamental problem with my friend's argument. If you don't read represents to get to the essence of what that compensation represents, you're going to get to every securities claim involving any acquisition and merger is going to mean at the end of the day you settled it and the shareholders in the class get an extra dollar per share. So, it's kind of like you were saying just now that you actually disagree with the description of their claim, too. In your brief, you were trying to distinguish between what the claim alleges and then what the settlement represents. But you're saying a 14A claim is just like never a claim alleging that the price was inadequate. Well, here's the difference, and this is why we focus on the second clause. I would say that a valid 14A claim is never a claim for increased deal consideration. What if someone settles an invalid 14A claim, right? It wouldn't have succeeded had they gone to trial, but it's settled. And then we have to determine, well, what does that settlement represent? I mean, I think you do, and I suppose in some case where the plaintiff never budged off of the position that, yeah, this is a claim that can't go anywhere, but this is a strike suit and you should still pay me something. And then they paid them something. Like maybe in that case, based on that litigation record, you would say it represented something else. Even then, I think I would be saying, look, at the end of the day, I think I could argue certainly on behalf of the insured that nobody pays anything for a completely invalid claim. And so we must have thought that there was at least some way they could have reformulated that to make it a claim for something other than inadequate deal consideration. But if you look at the record here, it is clear that by the time they got to their plaintiff's expert report, they had moved to a sort of reversion theory and a pure compensatory damages theory that actually was premised in their expert's testimony on the merger not going through. So I would say as a general matter, the right way to read these bump-up clauses, at least if they have this form, is if it's a settlement or a judgment for a 14A claim, that's not going to be within the exclusion. If it's a settlement for an appraisal claim under state law, that's going to be within the exclusion. But if you... Why did the stock drop? I mean, what's the reason for it? What's the disclosure? Is there any other reason other than this merger, the consideration that arose from the merger? Well, so their expert says that it was essentially a disclosure problem and it was a disclosure related to the merger, but specifically it was the failure to disclose that the CEO of Towers Watson, who had become the CEO of the joint entity, had a sort of compensation package pre-worked out when he sort of took over. So that's the disclosure problem. Now, when they come in... But for the merger, there wouldn't be a disclosure. But for the disclosure, there wouldn't be a requirement to have a proxy statement? I mean, so, right, what we're talking about is, but for a causation? I mean, I suppose I have a problem, but the language of this bump-up exclusion does not talk about but for causation. But didn't the shares fall after the consideration, after the disclosure of the merger? It was the merger that was the basis for the falling of the stock. Right, but Judge, here's the thing, which is Judge Trenga could not have been clearer, and this is at JA 531, that if plaintiffs walked into his court and said, we're here because there was an adequate disclosure under 14A, and we're just going to get the... we're going to bring a 14A claim for an adequate consideration in the merger, Judge Trenga said, that's a non-starter. I dismiss your complaint out of hand. JA 531. So what the plaintiffs had to do at that point is to say, all right, I got a 14A claim under Judge Trenga's rule, under this court's case in Lockspire, under the Supreme Court's decision in Santa Fe against Green, I have to bring a claim for a disclosure failure. And then I have to have a theory of compensatory damages that are based on the inadequate disclosure. And their plaintiff's expert could not be clearer that their theory, their compensatory damages is calculated on the assumption that the merger would not have gone forward if the disclosures had been adequate. How did the shareholders learn of that disclosure and the fact that it was going to fall based on that? So they learned about the compensation arrangement sort of after the fact. And so that's why some 14A claims are brought in real time. This one was brought sort of after the merger was in fact compensated. But again, their claim wasn't, boy, that price was too low, we're going to have a settlement, that's going to represent the inadequate deal consideration, and we get a bump-up. That's a theory you can bring under Delaware law, and there was a Delaware action that was exactly that kind of bump-up claim. But that's different, and maybe it's a subtle difference, but I think it's a critical one because it's the difference between this bump-up exclusion being a merger exclusion and this bump-up exclusion being focused on inadequate deal consideration. And of course, if you go back to why are these bump-up exclusions in the contracts, it's a particular moral hazard that the contracting parties are trying to address, which is the buying party is going to give too little in the merger deal. And then they can do that, and then they can settle in Delaware, and then they can effectively bump up the price. And that's what they're worried about. The moral hazard that the seller isn't going to disclose enough is not something that people recognize as a big, broad moral hazard. To the contrary, that's why people get D&O coverage, because they know it's impossible to have a merger and acquisition in this day and age without somebody saying, you should have disclosed a little more, you should have disclosed a little more. Well, I hope not, which is to say, I don't think Section 14A of the Exchange Act is a moral code. But my point is not whether it's a moral failure. The question is, is it the moral hazard that these bump-up exclusion clauses are directed at? And they are directed at a very specific concern. And again, if you go back and think about some of the powers you have under Delaware law, if you have 90% in the Santa Fe against Green case, you have 90%, 95% of the corporation, you can force a merger on the minority shareholders. They're only right, the only way to protect themselves is with an appraisal action. So in that context, there's an obvious incentive to force out the minority at too low a price. And then, of course, they bring their appraisal action, and then when the appraisal action says you got to give them $10 extra a share, you layer that off on the insurance company. That's what these bump-up exclusion provisions are trying to protect against. That's very different than the selling company, in the context of putting out its proxy statement, has some inadequate disclosure. That happens all the time, and that is the core of what the D&O coverage is for in the first place. And so I think, and again, I mean, I think, once you understand that this clause says representing, not resulting, I think you have the best reading, the single best reading of the plain language of the exclusion. But of course, under Virginia law, I don't have to have the best reading, the burdens on my friend to get things within the exclusion, and if there's ambiguity in the language, then it goes in favor of the insurer. And I think at best there's ambiguity here, and that's particularly true, because as I've tried to emphasize, if you have this clause to mean what my friend means, it makes the basic coverage for securities claims arising out of a merger and acquisition illusory. What is the best case for these bump-up exclusions that you seem to say at least limit these freeze-outs in a way? What case supports the way in which you've interpreted it? So the best case that interprets this is the one that we put in our 28-J letter, which is the Harmon case from Delaware. And I don't think it's an... Which court is that? What court is that? The Delaware. It's the Delaware State Court. You know, the corporate... You have a federal case... Yeah, Chancery Court, but of course... You have a federal court case that supports any of the limitations you've articulated to us very articulately, but I have not seen any research that supports any of the limitations you put forth. So, Santa Fe against Green Industry, Supreme Court case, if you go to that case, Lockspire from this court, all of those cases, and I think this is the point that Judge Easterbrook was making in Komatsu, all of those cases say that you can't have a 14A claim for inadequate deal consideration. So as to the interpretation of the bump-up exclusion clause in particular, then I will point you to that State Court case, the Harmon case that we put in the 28J letter. And I don't think it's an accident that the Delaware Chancery Court or the Delaware Court is the one that understands the difference between an appraisal action, which is squarely within the terms of that bump-up exclusion, and a 14A action. They deal with these appraisal actions all the time. They understand that in an appraisal action, the violation is inadequate deal consideration. So when you get a judgment or a settlement of that kind of claim, the settlement or the judgment itself represents the increase in deal consideration. That is not the case in a 14A action. You can't plead it that way, and their expert didn't testify that. So the basis of your argument arises from the Harmon case, the Delaware Chancery case. No, the basis of my argument comes from the Supreme Court... I'm speaking specifically to the limitations that you would put on the bump-up exclusion. I mean, I think the Harmon... I'm not relying on the Harmon court as authority. I'm relying on it as an example. That's the one you gave me. I asked you specifically for cases that support the limitations you put on this bump-up exclusion because I haven't seen any case that has articulated what you... You've done it very well, but I just haven't seen a case that has limited in the manner in which you presented today. I've asked, is there a case in the federal courts, circuit, even a district court case, Supreme Court, be wonderful, that has put it in the manner you've presented to us today? May I answer, Your Honor? Yes, go right ahead. The case that I have that does interpret the bump-up exclusion exactly the way that I've tried to articulate it today is just a state court case, Harmon. But... My question, do you hear my question? I said, is there a federal case, Supreme Court, court of appeals or district court case that has articulated this in the manner in which you've done? I'm not talking about the Delaware Chancery Court. Is there a case? It could be yes or no. I'm not being antagonistic. I'm just trying to help my research because, as I said, you put forth a very compelling case, but I don't know anyone that said it but you on the federal level. Let me hear what you're saying. So, my answer is no, but. And the but is simply that this argument builds on federal cases including the Supreme Court Santa Fe against Green case and the Lockspire case from this court and I think this is also consistent with everything that Judge Easterbrook said in Komatsu. And what I'm building on is the idea that there's a fundamental dichotomy between a 14A claim which is inadequate disclosure and a state law claim which is an adequate price. You've done that. That's exactly what I saw you doing, is building on it. I just didn't know if anyone else had built with you on this. It sounds like you're building it by yourself and you want us to join with you in it and I understand that position. Thank you, Your Honor. Thank you very much. You've got some rebuttal time, Mr. Hacker. Good morning, Your Honors. May it please the court. The insurer's policies provide broad defense and indemnity coverage. Stop, stop with the questions I just posed to Mr. King. Is there a federal case that supports the limitations that he has articulated regarding the bumper exclusions or do you have cases that would point in a different direction from a federal perspective? So, I agree with his answer, no. That's clearly right. As to his side of the equation, Kamatsu squarely supports the arguments that we're making and I'll explain why in a moment. Actually, I can address, because Judge Agee asked the question, doesn't Kamatsu reject what I think is his fundamental proposition underlying their entire position here, which is that in a Section 14A case, cannot be about, is never about in answer to Judge Rushing's question. Mr. Clement said it cannot be about inadequate consideration and Kamatsu, Judge Easterbrook says, that's categorically wrong. That premise, the entire premise of their appeal is wrong and he's not the only case that, not the only federal and other precedent who said that. So why does he say that Judge Easterbrook supports his proposition? I mean, you heard it. I mean, it was totally different from what you just said. I understand. Where do we draw this line here? Because I think he is misunderstanding what Kamatsu was saying and more fundamentally misunderstanding what a 14A action is. As I understood Mr. Clement, he was saying Kamatsu stood for the principle that the way that court read a 14A action, it would allow allow Towers-Watson to recover here. That's what I understood him to say. So give us your viewpoint. Right, and that's incorrect because what that does and what Judge Easterbrook was unpacking was it conflates a section 14A violation with the kind of loss that you have to establish in a 14A case and hence the kind of compensation and recovery you can obtain in a 14A case. What Judge Easterbrook is saying, and most courts, not all courts have agreed with this, is that in a 14A action you cannot, as Mr. Clement says, show up in court and say the only thing I'm complaining about is that I didn't receive sufficient consideration for my shares. That's not a valid 14A action. That's what they're misunderstanding. That may be true, but what is a valid 14A action is to say that there was a material non-disclosure that caused the shares to be underpriced and what I'm hearing in court today, not me but this hypothetical plaintiff is seeking, is increased consideration because the non-disclosure caused the acquisition to be underpriced and it is 100% valid compensation to obtain in a 14A action recovery for the difference between the amount you should have received and the amount you actually received as a result of the non-disclosure. That is a claim alleging inadequate consideration resulting from the non-disclosure and recovery is absolutely valid. That's exactly what Judge Easterbrook is saying. Indeed, Judge Easterbrook is saying as Judge Trenga did, that in that kind of case, you actually maybe have to allege that you received inadequate consideration because that's a necessary element of a 14A claim is economic loss. This court said so in CARP. The courts all agree that you have to establish, the plaintiff has to establish, the shareholder whose shares were relinquished in the transaction that was underpriced as a result of the alleged non-disclosure has to allege an economic loss. That economic loss in most and maybe all cases is going to be the fact that they received inadequate consideration. That type of 14A claim is a 14A claim alleging that you received inadequate consideration. It's not just Komatsu. In the plaintiff's class certification motion below, they cited a series of cases that say and hold correctly that the damages in a 14A action can include increased consideration of an amount that compensates for the inadequate consideration that you received. You'll see this at JA-170, but the Daimler-Chrysler AG securities litigation, that's the District of Delaware Judge Winn, that's a federal case. Sandberg case from this court. Lane v. Page, Brown v. Brewer, again they're all collected at JA-170, but they all establish what the plaintiff said to Judge Trenga in that case which is, quote, at JA-170, It is well settled that damages in a 14A securities action are subject to common methodologies that can be applied class-wide. Here, the applicable measure of damages is out-of-pocket losses, which are the standard measure of damages for Section 14A claims, and are, quote, measured by the difference between the fair value of all that the seller received and the fair value of what he would have received had there been no fraudulent conduct or nondisclosure. That's from the Daimler-Chrysler case, but that was the plaintiff's argument at class certification. That was the argument that Judge Trenga understood as the basis and indeed the sole basis for determining that the damages being sought by the shareholders were predominantly common. What Judge Trenga was saying in the class certification order, the 2020 order, is that I'm going to certify a class here and really the only disputed issue, as he says at the beginning of his opinion, is whether or not the damages being sought by the shareholder class were predominantly common, and what they were arguing and what he accepted as the basis for class certification was that the plaintiffs were alleging and seeking, quote, that they were alleging, excuse me, that they had received, quote, less than the true fair value from the merger for their shares. That was the stated premise of the plaintiff's motion for classification. It's what the judge agreed with at the class certification stage. Not that they approved it, but he was saying under Comcast, they don't have to prove that. That's just their theory. It's class-wide. He says at page 9 of the Westlaw opinion, quote, the common question of damages was shareholders, quote, out-of-pocket loss. This is Judge Trenga speaking here. This is Judge Trenga in the 2020 class certification order, explaining the plaintiff's theory of loss. The only theory of loss they ever asserted from the day one of the case to the date of the settlement, they asserted one theory of economic loss. One. So help me out. A lot was made in terms of this term alleging, the allegations and the complaint, and then the ultimate consideration of whether it should be the litigation conduct, which seems to be kind of where we are now. Explain that in terms of how that affects the 14A analysis. The way the bump-up clause is written, it starts with whether or not there's an as-to-claim alleging that the shareholders received inadequate considerations. That's why you focus on, that's what triggers the clause. Look at the complaint, what's being alleged. Then it goes on to say you have to as-to-a-claim like that, covered loss does not include, quote, any amount of any judgment or settlement representing the amount by which such consideration, that's the inadequate consideration, is effectively increased. So then you look at the settlement and determine whether any amount of the settlement is an amount representing an amount by which the consideration is effectively increased. And what Towers-Watson is trying to argue is that because part of Dr. Tabak's expert report assumed, and I'll explain this in a moment, but assumed that the merger had been rejected, they're saying it therefore could not have been This is plaintiff's expert you're talking about. This is plaintiff's expert, yes. Dr. Tabak. I understand Towers-Watson basically has two arguments here. This goes to what it was the plaintiffs focusing on, they're trying to say the settlement, whatever was alleged, turned out to have been something different. The plaintiffs supposedly shifted gears, and you heard my friend argue that this morning. They shifted gears along the litigation. They absolutely didn't shift gears. The car was in one gear the entire time and pointed in one direction, and that was to obtain recovery for literally the only loss they ever alleged. The only loss they ever asserted everywhere, including in Dr. Tabak's report, was inadequate deal consideration. That's what they said was the problem, and that's what they wanted compensation for.  Dr. Tabak, what Towers-Watson says is, well, Dr. Tabak has two ways, two ways of determining the true value of the shares. What both his models were doing was trying to quantify again, the only economic loss alleged, which was the plaintiffs were saying we should have gotten a fair market value and we didn't, and that's what we want as a remedy. Again, only thing they ever argued. And Dr. Tabak said, well, there's two ways I'm going to try to figure out what the true fair market value was. And one of those models was to say, I'm going to assume hypothetically that the deal was rejected. Only hypothetically. And if I do that, then what had happened in the real world was that when the merger was announced, the share values dropped to the announced share value. They were at something like 135 a share. The deal was announced at I think 128. And so of course, you know, the market price immediately declined to the announced share price. And then there's some market changes over time. The merger eventually gets approved. And the merger closes. And the shareholders holding shares claim that they didn't receive adequate consideration for their shares. And what Dr. Tabak is doing in his first damages model is trying to figure out a way to identify what that delta is, what the true market value is. So he assumes the plaintiff assumes that the deal didn't go through, the merger doesn't go through, and the shares bump back up to their true value. Their so-called true value. Right. Which in that example would have been a $7 difference. Exactly. And because there's some events in between in the years or whatever it was, there's some other things he has to do, some other work he has to do. But that's the premise. Right. He's trying to eliminate the merger because of what he calls a merger overhang. That was that the drop, that immediate like $8 drop or whatever it was. He's trying to eliminate that by assuming it doesn't go through and we're going to figure out the market price. But that is purely a hypothetical. Not once. Not once did the plaintiffs ever say, our theory has shifted and we're going to try to prove that the merger wouldn't have gone through or that it would have been renegotiated. To the exact contrary, here's what Judge Tranga says in his certification order in response to the defendant's suggestion that, well, you shouldn't certify a class here because this damages theory is basically hopeless. You're never going to be able to prove that. And what he says characterizing the plaintiff's response, which he adopts as the premise for his certification order, this is at page 3, plaintiff contends that under applicable case law, it's proof of class why damages does not depend on actually proving the assumptions built into Dr. Tamek's damages model. And that assumption is that the deal would have been rejected. They're not trying to prove. Not ever did they try to prove that the deal would have been rejected. Continuing with the quote, since economic loss is established by showing that the Tower shareholders received less than the fair value from the merger that was achieved through material misrepresentations or omissions in a proxy solicitation that served as an essential link to the merger. For this reason, loss causation is not determined by reference to whether or not the merger would have been approved, this is the plaintiff's argument, had the alleged nondisclosure been made, but rather by comparing the value of Tower stock with and without the merger. So, in describing the litigation record, Towers Watson focuses on this his first damages measure that the merger wouldn't have been approved, but it's just an assumption. And it's an assumption for the purpose of trying to calculate inadequate consideration. It's literally the sole purpose of that model and what the plaintiffs were trying to obtain in damages. Now, Mr. Clement says, well, they were trying to get compensatory damages, not literally, literally an increase in the consideration they received, but as Judge Rushing pointed out, that's what the bump up clause refers to is an effective increase, which may be true in appraisal action, but it's also true here. It's an effective increase because the only thing they ever argued was that they didn't get enough consideration, they wanted more. That's what the settlement in this situation, given these facts in this litigation record, basically obtained almost by definition. Another way to confirm that is to look at the class members in the case. The class members here were only shareholders who were holders as of the date that the merger closed, who were forced to relinquish their shares for the fixed merger price. So the only thing they got was consideration. They sold their shares, they didn't even sell their shares exactly, they were relinquished, and they got consideration. The only thing they could get, even in theory, was more consideration. They weren't trying to unwind the deal, they didn't have shares anymore, they weren't trying to keep their shares and get an extra amount of money on top of that. That seems to illustrate that it doesn't, kind of regardless of the theory of the expert or how it's measured, if we're looking at whether it's effectively additional compensation, effectively additional consideration, one of the big questions is are they still holding the shares or not? And they're not still holding the shares. They were relinquished, they had to be sold, and they're arguing we're owed some money still. It would seem that regardless of how you measure it, there's sort of a presumption that what they're asking for is additional consideration, at least in a context like this. I think I completely agree with that. In this context, it's more than a presumption. That's what they were seeking. How does that map onto the Delaware case, where our recollection there was that we didn't have things settled before there were expert reports and theories shared. Is that right? And how does that, how do we apply this sort of clause in that context? I know they've kind of abandoned that at this point. I agree that they've abandoned it. In fact, Mr. Clement today said that that was a bump up. It was a bump up. So I think it's more than abandoned, they've conceded it. Which by the way, I guess my query there is that here we're getting into all of the nitty gritty of the experts' theories and how they measured it and what they hypothetically envisioned. But this clause will also apply in places and in situations where you don't have all that evidence. I agree with that. We're sort of getting the nitty gritty because they've invited us to go there and it all, when you actually look, both the nitty and the gritty, everything points to this being an effective increase in deal consideration. But it's absolutely true that in a case like Delaware or many others where the case settles early on in the case, basically what you have are the allegations, the claim that seeks additional consideration. And if that's sort of all you have and maybe, this is maybe an important distinction, shareholders, and you're only seeking relief on behalf of shareholders who receive consideration, so all they could receive is additional consideration in those cases, I think it probably is at least a presumption that the settlement represents an effective increase in the consideration received. There is a, like Mr. Clement points out, the Harmon case, and I think actually There's never been an argument here, for instance, that we want our shares back plus X. No, no, never. The only thing they ever sought was the, you know, an amount that reflects the consideration, the delta between the inadequate consideration they received and the true market value. And everything that Dr. Tabic was trying to do was to identify the true market value at two different ways of doing it, ended up at the same place, which was, you know, eliminate the merger and the effects of the statement, the misleading statement about the merger that had on the stock price, you eliminate that, figure out what the true market value is, and that's your damages, which is quite explicitly, but at least effectively, an increase in consideration. But there's an important difference. The Harmon case, I think, is illustrative. I'm told some of the factual representations and statements in the opinion are not accurate, so I'm not at least, that's what How do I view the Harmon case? I mean, I rarely hear arguments that come up here that are based upon state court cases at that level. It's not the highest court. And it's an unpublished opinion. I mean, so, I get it. It could be saying a lot, but we don't typically even look at our own published opinions too much, or others, but now we're down at a lower state court looking at what somebody thinks is a very important case, but no one published it. And I mean, even, there are differences in the cases, I would say, but I'm intrigued by that. That seems to be a focal case here. Is it because this issue just doesn't come to the federal court, or what is it? I mean, the diversity that comes to, you know, federal courts and diversity cases, but to the extent, and I'm not asking this court to, you know, rely on Harmon, because it's analytically wrong in a couple of ways we pointed out in our response to the letter, but even accepting and even if they're not accurate, the factual differences, they're important to understand. First of all, the court there said, and again, I'm not sure this is factually true, but it was important to the court to say that there was no evidence of the true value of the shares. And so, it wasn't clear that they were actually sort of seeking the kind of inadequate consideration that was being sought here. Of course, all the evidence, the only evidence was about the true value of the shares, and the court said there the class, and again, I'm not sure this is factually right, but there it was important to the court that the class included only shareholders who sold prior to the merger closing. Right, so they didn't receive, on this hypothesis, this premise, they didn't receive any consideration. They sold prior to the shares, so their claim would be in the nature of like a 10B5 type claim, if it existed at all. It wouldn't be seeking increased consideration. It would be exactly the kind of stock drop damages theory that Mr. Clement and Towers Watson is talking about, where you're saying, well, the misstatement in the proxy about the merger drove down the price of the shares by $8, whatever it was, and then during the class period, I sold in reliance on, or presumptive reliance on, that statement, and now I want compensation for the stock I sold at an underpriced sub-market price. That's a 10B5 type argument. That's not the kind of argument that was made here, and only could be made, the only argument that could be made here was by the shareholders who sold or relinquished their shares on the date of the acquisition, and as Judge Easterbrook points out in Komatsu, first of all, the 14A action sort of has to allege that kind of loss, but even to the extent it's not a meritorious claim, I think Judge Rushing asked about this, even to the extent it's not a meritorious claim, he says correctly, that doesn't matter. That was their claim. If you have a terrible claim for receiving inadequate consideration, but that's seeking increasing consideration, but that's all you seek, and then the defendant settles it, that payment is an effective increase, regardless of the legal merits of your claim, and so I think Komatsu in those two respects is the federal precedent that very much supports our position. Anything else, Mr. Hacker? No. Thank you, Your Honor. Mr. Clement, you've got some rebuttal time. Thank you, Your Honor. Just a few points in rebuttal. Let me start with Komatsu. I would urge you to read the entire opinion, but I'm just going to give you two highlights from my perspective. One, and I'm quoting here, whether these complaints stated good federal claims was never put to the test, but the matter is doubtful. Santa Fe Industries against Green Supreme Court case holds that securities laws cannot be used to contend that a corporate transaction did not fetch the best price. Federal regulation is limited to disclosures while price is subject for appraisal and other remedies under state law. And the other thing I'd like to read, just the last thing of it, because it goes right to what my friend was saying. He finishes the opinion by saying, Komatsu wants us to proceed as if all DNO policies contain the same language, but they don't, so they won't. So we shouldn't. Only Judge Easterbrook could say that. But the point is that these are different clauses, and the clause there turned entirely on the allegations. So Judge Easterbrook could say these are claims that are going nowhere, but the allegations are all we need to look at. That's not true here. It's common between the parties that you can look beyond that. There's one note on the Harmon decision. We think it's persuasive, not because it's authoritative, but because it's a Delaware judge who deals with appraisal actions and knows the difference between a bump-up claim where the settlement or the judgment reflects an increase in deal consideration and other kinds of claims. And for what it's worth, I mean, if you're really worried about its status, it is on appeal to the Delaware Supreme Court. I happen to be counsel there. I like our chances in the Delaware Supreme Court. That opinion would be precedential, so you could wait, I suppose. But I like our chances because the Delaware courts see all of these claims. And they don't just look at this one claim and say, oh, well, you know, at the end of the day, the shareholders there are going to get something more. They understand that there's a range of claims. And disclosure claims, which are federal claims, are different from most state law claims. Just as a matter of clarification, I did not give away the Delaware claims in this case. There are three cases. The Virginia case, the Delaware case, and then a separate Delaware appraisal action. That separate Delaware appraisal action is the one that gave away. The reason we haven't talked about the Delaware case that's involved here is because if we win on the Virginia issue as I think we should, then that exhausts the policy limits. Do you want to respond to your friend's point about the 14A claims that you have to have the damage, the loss, that that is what we're talking about here, not necessarily the quote that you gave us from the Seventh Circuit's opinion? You need a damage theory. Obviously, you need loss causation. It's a federal claim. But then the question is, if you settle it, what does the damages amount represent? Does it represent an increase in deal consideration or does it represent the damages that you suffered for the inadequate disclosure? It's clearly the latter. Again, it may result in more money to the shareholders, but it doesn't represent an inadequate deal price. If you want to get into the details of the expert report, I don't think you have to because I just think it's as simple as this. A 14A claim doesn't come within the bump up exclusion. If you want to get into the nitty gritty, there's one thing to focus on that shows what their expert was actually doing. When he calculates the loss and what came out of the stock on the day after and all of that kind of stuff, before he gives his final number, $6.57 a share, he backs up the breakup fee that would have to be paid by the Towers-Watson shareholders because the whole damages model is based on the idea that this is the compensatory injury you suffered on the theory that the inadequate disclosure, if there had been adequate disclosure, there would have been no merger, no consideration. Because the damages number is based on the theory that the deal doesn't go through, he has to back out the breakup fee. That's how he gets from $7.15 a share to $6.57 a share. That is irrefutable evidence that the compensatory damages here are not a bump up in deal consideration. They are compensatory damages for inadequate disclosure on the theory that the deal would not have gone through. Thank you, Your Honor. Thank you very much, Mr. Clement. We appreciate the excellent argument by counsel on both sides. We could have that on a regular basis. We'll come down now and greet counsel and then move on to our next case.
judges: G. Steven Agee, James Andrew Wynn, Allison J. Rushing